## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Fredeswilda Santiago and Alexandra Jones, | : | CIVIL ACTION NO: |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| Dattco, Inc. | : | |
| Defendants. | : | |
| | : | March 16, 2009 |

## COMPLAINT

### I.    INTRODUCTION

1.      This is an action brought by the Plaintiffs, two women who were employed as Dispatchers by the Defendant, DATTCO, Inc., a bus transportation company, arising from the Defendant's failure to pay the Plaintiffs overtime wages for their work and from the Defendant's impairment of the Plaintiffs' right to make and enforce contracts because of their race and/or ethnic origin.  The Plaintiffs allege violations of the overtime wage provisions of the federal Fair Labor Standards Act, 29 U.S.C. §201, et seq., and the overtime wage and wage payment provisions of Connecticut law, Conn.Gen.Stat. §31-58 et seq.  The Plaintiffs also allege violations of their rights pursuant to 42 U.S.C. §1981.  The Plaintiffs seek double their unpaid wages pursuant to both the FLSA and Connecticut law, reinstatement, their lost wages and benefits of employment, and damages for their pain, suffering and emotional distress.  The Plaintiffs also seek their reasonable attorney's fees and costs.

### II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1331.  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that

the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

      3.     Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to this claim occurred within this judicial district.

## III.    **THE PARTIES**

      4.     Plaintiff Fredeswilda Santiago (hereinafter, "Santiago") is a person residing at 105 Jubilee Street, New Britain, Connecticut. Plaintiff Santiago is a person of Hispanic origin. At all times relevant to this Complaint, Santiago was employed by the Defendant at its New Britain, Connecticut location.

      5.     Plaintiff Alexandra Jones (hereinafter, "Jones") is a person residing at 44 Cubeta Road, Middletown, Connecticut. Plaintiff Jones is a person of African-American origin. At all times relevant to this Complaint, Jones was employed by the Defendant at its Middletown, Connecticut location.

      6.     At all times relevant to this Complaint the Plaintiffs were employees of the Defendants as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. §203(e)(1), and by Connecticut General Statutes §31-58(f) and 31-71a(2).

      7.     At all times relevant to this Complaint, the Plaintiffs were employees engaged in commerce within the meaning of 29 U.S.C. §206(a) and 207(a)(1).

      8.     Defendant DATTCO, Inc. is a corporation organized under the laws of the State of Connecticut, with a principal place of business at 583 South Street, New Britain, Connecticut, and with terminals at several other locations in Connecticut, Massachusetts and Rhode Island.

9.      At all times relevant to this Complaint, the Defendant was an employer as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. §203(d), and by Connecticut General Statutes §31-58(e) and 31-71a(1).

**IV.    FACTS**

**A.    Fredeswilda Santiago**

10.     Plaintiff Santiago was employed by the Defendant from in or about 1995 until on or about September 7, 2008.  From in or about 2001 until the end of her employment, Santiago was a dispatcher for the Defendant.

11.     Santiago typically worked about 75 hours a week.  This included regular work hours from about 6:15am until 5:30pm, Monday through Friday.  Because Santiago was also assigned to prepare payroll, she typically worked an additional twenty hours, five hours each Monday evening and about fifteen hours on weekends.  Because of the volume and pace of her work, Santiago was often required to take short or no lunch breaks, amounting to a total of only about two hours a week.

12.     Santiago's work hours included time spent in the Defendant's New Britain terminal, time spent driving a bus when needed, and time spent working from home, such as doing payroll.

13.     As a dispatcher, Santiago was paid a salary of $690 a week.

14.     Santiago was not paid overtime at the rate of one and one-half times her regular hourly rate for hours worked in excess of forty hours in a one week period.

15.     One of Santiago's co-workers was Cathy Cancel.  Cancel is white and became a dispatcher in or about 2006.

16.     On several occasions, Cancel made disparaging comments to or about Santiago because she is Hispanic, or about other Hispanic workers.

17.     These remarks were distressing to Santiago, created a hostile work environment for her, and interfered with her ability to perform the duties of her job.

18.     On several occasions, Santiago's supervisor, Fred Till, would speak to Cancel about her use of racist language.  However, Till left DATTCO in or about January 2008 and was replaced by Paul Demaio.

18.     In or about June 2008, Santiago complained to Paul Demaio, about Cancel's remarks about Hispanics.  Another Hispanic co-worker made similar allegations about Cancel. Upon information and belief, the Defendant took no corrective action.

19.     In the period from June 2008 until Santiago left her employment with the Defendant, Cancel made jokes about Hispanic people on several occasions, and in making disparaging remarks about Hispanics would tell Santiago "You know how you guys are."

20.     In or about August 2008, Cancel told Santiago, in referring to some of the Defendant's drivers who are Hispanic, "I don't want your spic-ly friends to call or come into the office."

21.     On another occasion in or about August 2008, Cancel told an employee in the Sales and Service Department, in Santiago's presence, "Wilda is a dumbass, don't ask her, talk to me."

22.     Although Santiago continued to complain to Demaio about Cancel's remarks about Hispanics, upon information and belief, the Defendant took no corrective action.

23.     On or about September 8, 2008, feeling that Cancel's racist speech interfered with her ability to do her job, and that complaining to Till would not get any results, Santiago resigned her position with Defendant.

4

### B.   Alexandra Jones

24.     Plaintiff Jones was employed by the Defendant from in or about April 1999 until on or about September 14, 2008.  From in or about October 2005 until the end of her employment, Jones worked as a dispatcher.

25.     Jones typically worked about 80 hours a week.  Jones typically worked from about 5:30am to 6:30pm, Monday through Friday, often with no lunch breaks.  Jones also typically worked three evenings a week, for three hours each evening.  Jones also typically worked eight hours over the course of the weekend.

26.     Jones' work hours included time spent in the Defendant's Middletown terminal, time spent driving a bus when needed, and time spent working from home, such as doing payroll.

27.     As a dispatcher, Jones was paid a salary of $615 a week.

28.     Jones was not paid overtime at the rate of one and one-half times her regular hourly rate for hours worked in excess of forty hours in a one week period.

29.     Defendant's Middletown terminal manager Bill Haffernan frequently made disparaging remarks about black people to Jones or in her presence.

30.     When Jones complained about his remarks to Haffernan's superiors as early as 2006, they did not take any action.  Shortly after that, Haffernan had told her that "What goes on in Vegas stays in Vegas," and that nothing would ever happen to him if she complained.  For that reason, Jones stopped complaining to upper management about Haffernan.

31.     Haffernan would complain about statements he had read in the newspaper by Jesse Jackson or Barack Obama.  On one occasion, Haffernan made a copy of a newspaper article and put it on her desk, telling her "What are you black people doing in these black churches?  We ought to take every black church and burn it down."  Jones responded "Why

5

does every black person have to be responsible for what every black person says?"
Haffernan then left the room, saying "You people disgust me."

32.    On several occasions Haffernan made comments about "how easy black people
have it."

33.    Haffernan sometimes used the "n-word" in Jones' presence.  On other
occasions, Haffernan would curse at or humiliate Jones in the presence of her children.
Jones would sometimes leave work in tears because of Haffernan's treatment.

34.    In January 2008, Haffernan said that he wanted to speak to Jones in private.
She went to his office but he ordered her to come with him into the women's rest room.  In the
women's rest room, Haffernan proceeded to tell her that either she would leave the company
or he would - and that he was not going to leave.

35.    Haffernan began telling Jones that he could do things that would make her leave
when another employee came into the women's room and interrupted him.  At this point,
Jones was in tears and left the room.

36.    In September 2008, Haffernan would hand her an "exit" form (used for employee
resignations) every day.

37.    The week before Jones resigned, she was working on the weekend with a
DATTCO manager, Phil Johnson.  Jones asked Johnson to move her to another location.
When Johnson asked why, Jones stated that she could not tell him because if she did, she felt
that Haffernan would hear about it and she would be treated even worse by him.

38.    Johnson told Jones that if she did not tell him why she wanted to be moved, he
would not take any action.

39.    On Monday, Haffernan came into work in a rage.  Upon information and belief,
Johnson had told Haffernan about his conversation with Jones.

40.     On or about September 14, 2008, feeling that she could no longer tolerate Haffernan's racist speech and hostile treatment, Jones resigned her position with Defendant.

## V.     COUNT ONE: FLSA AND CONNECTICUT OVERTIME VIOLATIONS

1.     The Plaintiffs restate, re-allege and incorporate by reference paragraphs 1 through 40, above.

41.     The Defendant did not pay the Plaintiffs at the rate of one and one-half times their regular hourly rates for hours worked in excess of forty hours in a week, in violation of the federal Fair Labor Standards Act, 29 U.S.C. §207 and Connecticut overtime laws, including Conn.Gen.Stat. §31-68 and §31-76b through 31-76c.

42.     The Defendant's failure to pay overtime wages as required by federal law was willful, inasmuch as the Defendant was aware of his obligation to pay the Plaintiffs consistent with the federal minimum wage and did not do so.

43.     The Defendant's failure to pay overtime wages as required by Connecticut law was willful, arbitrary, and/or in bad faith, inasmuch as the Defendant was aware of his obligation to pay the Plaintiffs consistent with the Connecticut minimum wage and did not do so.

## VI.     COUNT TWO: VIOLATIONS OF 42 U.S.C §1981

1.     The Plaintiffs restate, re-allege and incorporate by reference paragraphs 1 through 43, above.

44.     The Plaintiffs were subjected to disparaging and demeaning remarks about their racial/ethnic background and racial epithets were directed at them on a regular basis. When they sought an appropriate remedy, through the Defendant's managers, nothing was done.

45.     The Plaintiffs were constructively discharged from their employment by the Defendant because the environment was so abusive and intolerable that a reasonable person in the Plaintiffs' position would have felt compelled to quit.

46.     The Defendant's actions, including subjecting the Plaintiffs to a hostile work environment, impaired the Plaintiffs' ability to make or enforce contracts on account of their race in violation of 42 U.S.C. §1981.

47.     The Defendant's actions were in willful violation of the Plaintiffs' rights under federal law because they *(actively participated in creating a hostile work environment and also)* failed to remedy the intolerable workplace environment.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs requests that this Court:

1.  Order the Defendants to pay to the Plaintiffs all wages owed, consistent with the federal Fair Labor Standards Act and Connecticut overtime, and wage payment laws;

2.  Award the Plaintiffs liquidated or double damages for all wages owed pursuant to 29 U.S.C. §216(b) and Conn.Gen.Stat. §31-68(a) and §31-72;

3.  Award the Plaintiffs their reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b) and Conn.Gen.Stat. §31-68(a) and §31-72;

4.  Award the Plaintiffs prejudgment and post-judgment interest;

5.  Reinstate the Plaintiffs to the positions that they would have held but for their constructive discharge by the Defendants in violation of their rights pursuant to 42 U.S.C. §1981;

6.  Award the Plaintiffs compensatory damages for their pain, suffering and emotional distress; and

7.  Award the Plaintiffs such other legal and equitable relief as the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The Plaintiffs respectfully request a trial by jury as to all claims to which they are
entitled.

THE PLAINTIFFS,

BY: _____

Peter Goselin ct16074
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2292
(860) 233-9821